UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARYL L. LAVENDER,

                Petitioner,

vs.                            Case No. 3:17-cv-1308-J-39JRK

MIKE CAROLL, SECRETARY,
FLORIDA DEPARTMENT
OF CHILDREN AND FAMILIES,
et al.,

                Respondents.

_____

**ORDER**

**I.   STATUS**

Petitioner, Daryl L. Lavender, who is involuntarily civilly
confined at the Florida Civil Commitment Center (FCCC) pursuant to
Fla. Stat. § 394.910, et seq.(Sexual Violent Predators Act),
initiated this action by filing a pro se Petition Under 28 U.S.C.
§ 2254 for Writ of Habeas Corpus By a Person in State Custody
(Petition) (Doc. 1).  Per Petitioner, the Petition only challenges
the April 19, 2016 recommitment order on the 2015 annual review
probable cause hearing.  Petition at 1-2.  Respondents filed a
Response to Petition for Writ of Habeas Corpus (Response) (Doc.
5).[1]  Thereafter, Petitioner filed a Reply Motion in Opposition to

_____

[1] The Court will hereinafter refer to the exhibits in the Appendix

Strike, Deny, or Otherwise Dismiss Respondents' Response to Petition for Writ of Habeas Corpus Filed March 6th, 2018, With Attached Exhibits 1-3 (Reply) (Doc. 9) (footnote omitted).[2]  See Order (Doc. 4).  To the extent Petitioner is asking that the Response be stricken or dismissed, that request is due to be **denied** as the Response does not include an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  See Rule 12(f), F. R. Civ. P.  To the extent Petitioner is attempting to raise a Daubert claim,[3] that matter will be addressed within the opinion.

## II.  PROCEDURAL HISTORY

A procedural history is provided to provide context. Petitioner was tried and convicted of a violent sexual offense in 1993.[4]  Thereafter, on March 29, 2000, the State Attorney's Office

---

of Exhibits to Response to Petition for Writ of Habeas Corpus (Doc. 6) as "Ex."  The page numbers referenced in this opinion are the Bates stamp numbers at the bottom of the page of each exhibit or the page number on the particular document.

2 With respect to the Petition, Response, and Reply the Court will reference the page number assigned by the electronic filing system.

3 Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

4 The Court takes judicial notice of Lavender v. Secretary, DOC, et al., Case No. 3:11-cv-319-J-20MCR (M.D. Fla.), in which Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his civil commitment.  The Court denied the petition, dismissed the action with prejudice, and denied a certificate of appealability.  Id. (Doc. 47).  The

filed a petition seeking Petitioner's commitment as a sexually violent predator.  A jury found Petitioner to be a sexually violent predator, and the trial court, on April 27, 2000, entered a final judgment of civil commitment.  The state appellate court affirmed the civil commitment decision and the Florida Supreme Court declined to exercise jurisdiction over the case.

The trial court, on May 30, 2007, found probable cause to believe it safe to release Petitioner and set a trial.  Fla. Stat. § 394.918(3).  After hearing evidence, the trial court found Petitioner remained a sexually violent predator who should remain confined in a secure facility for long-term control, care, and treatment.  The state appellate court affirmed.

Petitioner filed a motion to vacate the commitment order and a state petition for writ of habeas corpus, both of which were denied.  The state appellate court affirmed.  Petitioner filed a federal petition for writ of habeas corpus challenging the 2008 civil commitment case, and this Court denied the petition.  Lavender v. Secretary, DOC, et al., Case No. 3:11-cv-319-J-20MCR (M.D. Fla.) (Doc. 47).

---

Eleventh Circuit denied a certificate of appealability as well. Id. (Docs. 57 & 58).  The Supreme Court of the United States denied a petition for writ of certiorari.  Id. (Doc. 60).  The Court also takes judicial notice of Lavender v. George H. Sheldon, etc.; et al., Case No. 3:03-cv-557-J-32MCR (Petitioner's first federal habeas corpus petition dismissed without prejudice to allow Petitioner to exhaust state court remedies on unexhausted claims).

In the Circuit Court, Twelfth Judicial Circuit in and for DeSoto County, Petitioner, on December 16, 2015, filed an Amended Petition for Writ of Habeas Corpus Pursuant to Florida Rules of Criminal Procedure, 3.850; and Florida Statues § 394.9215 (2009 Supp.).[5]  Ex. G at 1-138.  In an Order entered on October 18, 2016, the circuit court denied the petition.  Id. at 663-74.  On June 28, 2017, the Second District Court of Appeal affirmed per curiam. Ex. K.  The mandate issued July 25, 2017.  Ex. L.

Meanwhile, concerning the matter at hand, Licensed Psychologist, Carrole Depass, Psy.D. (Doctor of Psychology), of the Florida Civil Commitment Center (FCCC), submitted the April 23, 2015 Treatment Progress Report, per Fla. Stat. § 394.918(1).[6]

---

[5] Under Fla. Stat. § 394.9215, Right to habeas corpus, a person held in a secure facility under the Involuntary Civil Commitment of Sexually Violent Predators, may file a petition in the circuit court, after exhausting administrative remedies, challenging the conditions of confinement as being violative of a statutory right under state law or a constitutional right under the state or federal Constitution, or challenging the appropriateness of the facility.

[6] Under Fla. Stat. § 394.918 Examinations; notice; court hearings for release of committed persons; burden of proof, it states:

> (1) A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court's discretion. The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon

4

Ex. A at 1-2.  Initially, she provided historical information as to Petitioner's diagnosis of Pedophilia.  Id. at 1.  Dr. Depass noted, Michael T. D'Errico, Ph.D., made the diagnosis of Pedophilia, Exclusive Type, Sexually Attracted to Males, and found Petitioner met the criteria as a sexually violent predator.  Id.

---

receipt of the report, the court shall conduct a review of the person's status.

(2) The department shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.

(3) The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing and the right to be present. Both the petitioner and the respondent may present evidence that the court may weigh and consider. If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.

(4) At the trial before the court, the person is entitled to be present and is entitled to the benefit of all constitutional protections afforded the person at the initial trial, except for the right to a jury. The state attorney shall represent the state and has the right to have the person examined by professionals chosen by the state. At the hearing, the state bears the burden of proving, by clear and convincing evidence, that the person's mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence.

Dr. DePass also noted Jeffrey L. Benoit, Ph.D., found Petitioner met the diagnostic criteria for Pedophilia, Sexually Attracted to Males, and Personality Disorder, Not Otherwise Specified with significant antisocial features.  Id.  Dr. Benoit also found Petitioner met the commitment criteria as a sexually violent predator.  Id.

In her Report, Dr. DePass summarized past treatment progress reports:

> As stated in previous treatment progress reports, the court found Mr. Lavender met commitment criteria as a sexually violent predator and committed him to the FCCC on April 27, 2000.  He was admitted to the FCCC on May 1, 2000.  Records indicate that when interviewed for his April 16, 2007 annual review, Mr. Lavender suggested that his previous flat line Penile Plethysmograph (PPG) and non-deceptive polygraph are evidence that he does not need treatment and should not be committed at FCCC.  To date, he has not consented to participate in the Comprehensive Treatment Program (CTP) for men who have sexually offended.  However, clinical records show that on October 6, 2014 Mr. Lavender consented to participate in Thinking for a Change (T4C) group.  T4C is a voluntary psychoeducational group offered to all residents regardless of their legal status.  Mr. Lavender began T4C group on December 5, 2014.  A review of group notes indicates that he appears to have good attendance and he is actively engaged in that group's process.

Id. at 1-2.

Dr. Depass provided information regarding her interview session with Petitioner concerning development of the report:

> [Mr. Lavender] entered the interview room and (as he did in the previous interview last year) dropped paperwork on this writer's desk indicating that there was a restraining order with this writer's name in it.  Mr. Lavender then indicated that he would not be signing any waiver document or any other document.  When asked if he intended to consent to the CTP upon completing T4C, he indicated that with regards to T4C, "That's all I'm going to do."  After this writer advised him that if he was going to decline to participate in this interview with regards to reviewing and signing documents, then there was no reason to continue the session.  He agreed, picked up the folded paperwork he brought, and left the interview room.

Id. at 2.

Dr. DePass concluded:

> **Mr. Lavender has yet to fully address relevant treatment issues (i.e.: sexual interests, distorted attitudes and behaviors, socio-affective issues and self-management) that are associated with his offending history.** Therefore, **it is recommended that Mr. Lavender initiate participation in the CTP** (beyond T4C) at the Florida Civil Commitment Center.

Id. (emphasis added).  Petitioner refused to sign the Resident Acknowledgement of Treatment Progress Report.  Ex. A at 3.

On July 14, 2015, the Honorable J. Michael Traynor, in the Circuit Court for St. Johns County, appointed Registry Counsel, Marcella Beeching, to represent Petitioner for annual review purposes.  Id. at 42-43.  Ms. Beeching filed a Motion for

7

Confidential Independent Expert Examination, asking the court to appoint an independent expert to evaluate Petitioner and provide a confidential report.  Id. at 45-46.   The court granted the motion and appointed Alan J. Waldman, M.D., a psychiatrist, as an independent confidential expert to assist the defense by making an assessment as to whether Petitioner's condition has so changed that it is safe for Petitioner to be at large.  Id. at 47.  The court stated, "[u]nless waived by the defense, the expert's report and all conclusions contained in it are considered defense work product and shall be deemed to fall under the lawyer-client privilege."  Id.

Ms. Beeching, on November 16, 2015, wrote Petitioner a letter explaining that Fla. Stat. § 394.918 delineates the criteria under which a civilly committed person may be released from FCCC.  Ex. A at 143.   Ms. Beeching reminded Petitioner, that under the relevant criteria, he had to show his condition had changed.  Id.

On December 3, 2015, Petitioner, pro se, filed a Notice of Appearance as Co-counsel and Motion in Limine – Per Request for a Nelson Inquiry Regarding the Representation by Ms. Marcella Beeching, Esquire.[7]  Id. at 137-42.  Of import, on January 6, 2016, Ms. Beeching filed a Notice of Non-Adoption of Respondent's Pro Se Motions.   Id. at 169-70.   Thereafter, the Honorable Howard

---

7 Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

McGillin, Jr., Circuit Judge for St. Johns County, entered orders
scheduling a Nelson hearing and an annual review hearing. Id. at
173, 203.

On February 26, 2016, Judge McGillin conducted an inquiry as
to why Petitioner requested a Nelson inquiry. Id. at 666-91.
During this proceeding, Ms. Beeching advised the court Dr. Waldman,
the appointed confidential expert, prepared a new score sheet.
Id. at 673. Ms. Beeching stated she asked for the appointment of
a psychiatrist because, if appointed, there would be an appointed
medical doctor who would be able to evaluate Petitioner's physical
condition as well as his mental state. Id. at 673-74. Ms.
Beeching explained this was important because Petitioner had
turned sixty and had medical problems or issues that could affect
his libido, possibly working in his favor to show change in his
condition. Id. The court found no ineffective assistance of
counsel. Id. at 683. The court gave Petitioner the opportunity
to proceed pro se or proceed with the assistance of Ms. Beeching.
Id. at 683-84.

On March 24, 2016, the court continued the Nelson Hearing and
conducted an Annual Review Hearing. Id. at 693-97. Petitioner
argued the reliability of the conviction, "is a matter of Daubert."
Id. at 702. The court told Petitioner: "[t]he reliability of the
conviction is a matter of law and cannot be overturned at this

9

point.   There is absolutely nothing I could do or even the US Supreme Court could do at this point." Id.

Ms. Beeching reiterated the reason she asked the court to appoint Dr. Waldman was because he was a psychiatrist, not a psychologist; therefore, he could speak to Petitioner's physical as well as mental condition.  Id. at 705.  The court found counsel was not ineffective and told Petitioner he could proceed pro se or proceed with Ms. Beeching.  Id. at 708-709.  Petitioner decided to proceed with Mr. Beeching as his counsel.  Id. at 714.

At this point, the court conducted the Annual Review Hearing. Id.  The parties stipulated to the admissibility of the Static-99R, which reflected a score of two, a low-moderate risk category. Id. at 713-15.  See Ex. A at 216, Static 99R Coding Form, dated December 11, 2015.  Ms. Beeching called Dr. Waldman to identify the document and to seek its admittance.  Id. at 716-19.  Dr. Waldman explained a score of two is: "an actuarial that predicts a low to moderate risk of recidivism, based on these 10 criterias and only these 10 criterias [sic]."  Id. at 719.  Upon inquiry, Dr. Waldman testified he would not rely solely on the Florida Specific Sexual Recidivism Research Study dated September 23, 2013 in a clinical opinion.  Id. at 724.

The parties stipulated to the FCCC's report of April 23, 2015 and that it could be considered as evidence.  Id. at 725-26.  When

Petitioner complained the report was just hearsay, the state explained the Sexually Violent Predator Statute allows for hearsay in review hearings.  Id. at 727.

Petitioner testified he had a job at FCCC as a house man. Id. at 728-79.  He said he participated in the program Thinking for a Change (T4C) and received a certificate of participation. Id. at 729-30.  Petitioner explained he has not participated in any other programs at FCCC because he maintains that he did not commit the underlying sexual offense and refuses to sign any consent forms stating otherwise.  Id. at 729-31.  Ms. Beeching moved to place the certificate of participation for T4C into evidence and it was admitted without objection.  Id. at 731-32. Ms. Beeching also moved for admission of statistics from the Florida Specific Sexual Recidivism Research, dated September 23, 2013.  Id. at 732.  Without objection, the court admitted the tables and evidence on the statistics.  Id. at 735.

In closing, Ms. Beeching argued, not only did Dr. Waldman's Static-99 show a low to moderate recidivism rate for Petitioner, but the tables prepared by the Department of Children and Families, who are the guardians of Petitioner, provide statistics showing a very low rate of recidivism for individuals in Petitioner's age group.  Id. at 736.  Ms. Beeching referenced Petitioner's completion of the T4C program.  Id. at 737.  She noted that

Petitioner will not participate in other programs at FCCC because he maintains his innocence and will not admit to the sexual offense. Id.

The state, in closing, asked that Petitioner remain committed to the FCCC as he had not shown his specific condition so changed as to meet the probable cause criteria. Id. at 737. Although the state recognized the statistical data from the Department of Children and Families' research, the state argued there was "no evidence before the Court that Mr. Lavender's circumstances have so changed that there would be probable cause to warrant a trial for release[.]" Id. at 738. The state asked that the court divine whether the statistics go to sexually violent predators who met the criteria for commitment or were just statistics for all sexual offenders. Id. at 738-79. The court took the matter under advisement and agreed to read the materials, study them, and divine whether the materials in evidence go to sexually violent predators who meet the commitment criteria. Id.

On April 5, 2016, Ms. Beeching filed a Second Notice of Non-Adoption of Respondent's Pro Se Motions. Id. at 331-32. The circuit court, on April 19, 2016, entered its Order on Annual Review. Id. at 343-46. It made the following findings of fact:

> A   The Court considered, the Treatment Progress Review submitted by stipulation of the parties of Dr. Carrole DePass of the Florida Civil Commitment Center. Dr. Depass'

12

conclusion is that the Respondent has "yet to fully address relevant treatment issues (i.e.: sexual interests, distorted attitudes and behaviors, socio-affective issues and self-management) that are associated with his offending history." (State[']s Exhibit 1, Page 2, Docket Entry Number 475).

B   The Court considered the testimony of the Respondent's appointed expert, Dr. Alan Waldman. Dr. Waldman presented his analysis of the testing of Mr. Lavender on the instrument known as the Static-99R. The Static 99R (Respondent Exhibit 2, Docket Entry Number 470) indicated that Mr. Lavender is at low to moderate risk of recidivism.

C   The Court considered Mr. Lavender's Certificate of Participation in the psycho-educational group "Thinking for a Change" (Respondent Exhibit 3, Docket Entry Number 471). Respondent's participation in this program is also noted in Dr. DePass' report.

D   The parties stipulated to the admissibility of the Florida Specific Sexual Recidivism Research Study Dated September 23, 2013 (hereinafter "the Report').

Ex. A at 343-44.

The court stated it reviewed the Report extensively and found its focus is on entry into the Sexual Violent Predator Program, and does not purport to, nor does it predict an individual's outcome. Id. at 344. The court recognized the new criteria Static-99R, used in Petitioner's case, reflects the reduced rate of recidivism applicable to respondents like Petitioner who are over sixty. Id. Again, the court noted that the emphasis of the Report is what is to be considered for entry into the program, not

13

to provide analysis of a situation like Petitioner's, "namely those who have been in civil commitment for a number of years, have failed to participate in the Comprehensive Treatment Program (State's Exhibit 1, Docket Entry Number 475), and who have reached age 60 or older." Id. As such, the court found, "[p]sychological and statistical analyses must be read with respect for their own stated premises and assumptions." Id.

Under conclusions of law, the court first noted, Petitioner bears the burden to demonstrate "probable cause" that further evidentiary review be held. Id. at 345. The court opined its task was limited to determining, "whether there is sufficient evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be at large." Id. (citation omitted).

The court found: "none of the evidence presented regarding the Report" or Petitioner's score on the Static 99R rises to the level required to make a finding of probable cause to believe that it is safe to release the person. Id. Indeed, the court held the Static-99R shows Petitioner, "still presents a risk of recidivism." Id. The court noted, even the Treatment Progress Review showing some participation in therapy reflects "continued failure to participate in other recommended therapy." Id. As

14

such, the court opined, even viewing the facts in the light most favorable to Petitioner, it could not conclude Petitioner "is safe to be at large." Id.

### III.   EVIDENTIARY HEARING

Established case law instructs that a habeas petitioner carries the burden to establish a need for an evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012). After review, the Court concludes it can "adequately assess [Petitioner's] claims without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  The Court finds Petitioner has not carried his burden and is not entitled to an evidentiary hearing.  Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### III.   THE PETITION

The Petition is timely filed.  Response at 3.  Respondents assert that ground one of the Petition, the Daubert claim, is procedurally defaulted.  Response at 7-8.

### IV.   HABEAS REVIEW

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), otherwise known as the Antiterrorism and Effective Death

Penalty Act (AEDPA).   Response at 4-5.   Federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), cert. denied, No. 19-6918, 2020 WL 1325907 (U.S. Mar. 23, 2020). See Sealey v. Warden, Ga. Diagnostic Prison, No. 18-10565, 2020 WL 1527977, at *9 (11th Cir. Mar. 31, 2020).

The Eleventh Circuit explained:

> A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Virginia v. LeBlanc, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting

16

> Woods v. Donald, ––– U.S. –––, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); see also Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1330-31 (11th Cir. 2019).

For a petitioner to prevail, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir.), cert. denied, 140 S. Ct. 394 (2019). Therefore, unless a petitioner shows the state-court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

"The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 2020 WL 1527977, at *9 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per

17

curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).  Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."  Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Finally, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rational for its ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).  Therefore, to the extent Petitioner's claims were adjudicated on the merits, the claims must be evaluated under section 2254(d) and the evaluation is limited to examining whether the highest state court's resolution of the claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court.  Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008), cert. denied, 555 U.S. 1183 (2009).

## V.   EXHAUSTION AND PROCEDURAL DEFAULT

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

In order to be exhausted, a federal claim must be fairly presented to the state courts such that the state court was alerted to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (for example, by including the federal source of law, by referencing a case deciding such a claim on federal grounds, or by labeling the claim federal). The end-goal is the state court be given a meaningful opportunity to address the federal claim. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005), cert. denied, 547 U.S. 1073 (2006). Presenting facts to support a federal claim or making a similar state law claim does not satisfy the exhaustion requirement. See Lucas v. Sec'y, Dep't

of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 568 U.S. 1104 (2013).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).  If cause is established, a petitioner must demonstrate prejudice.  To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.  Alternatively, a petitioner may obtain review if he demonstrates a fundamental miscarriage of justice will result if the Court does not reach the merits of the claim.

## VI.  GROUNDS FOR RELIEF

### A.  Ground One – the Daubert Claim

In his first ground of the Petition, Petitioner raises a Daubert claim, asserting there was a "bogus pedophile diagnosis"

and claiming he has been deprived of a meaningful means to challenge the diagnosis, in violation of due process of law. Petition at 6.  Petitioner raised a comparable claim in his appeal brief upon the trial court's finding there was no probable cause to believe Petitioner's condition had so changed that it was safe for him to be at large.  Ex. B at 8-24.  Petitioner complained his counsel would not adopt his pro se Daubert motion challenging the underlying conviction and subsequent determination that as a pedophile he needed to be committed to long-term civil commitment and be subjected to treatment to address sexual interests, distorted attitudes and behaviors, socio-affective issues, and self-management.

The state, in its response brief, noted that when Petitioner complained about his counsel's failure to adopt Petitioner's pro se Daubert motion, the trial court told Petitioner his conviction was a matter of law and could not be overturned.  Ex. C at 5. Notably, Petitioner's underlying 1993 criminal conviction and his subsequent civil commitments in 2000 and 2008 were a matter of law and could not be challenged.  See Response at 9.  The Fifth District Court of Appeal (5th DCA), on May 2, 2017, per curiam affirmed the decision of the circuit court.  Ex. E.  The mandate issued on May 22, 2017.  Ex. F.

21

After due consideration, the Court concludes Petitioner's Daubert claim is unexhausted and procedurally defaulted.  Ms. Beeching never adopted the pro se Daubert motion.  The trial court did not address or rule on the merits of the motion as Petitioner was not entitled to hybrid representation.  Sams v. State, 849 So. 2d 1172, 1174 (Fla. 3d DCA 2003) (per curiam) ("Neither the Federal nor the Florida Constitution's right to counsel provision embodies a right to hybrid representation.").  Petitioner elected to keep his appointed counsel after the trial court found counsel did not perform deficiently.  Thus, the record shows Petitioner was represented by counsel, counsel never adopted the Daubert motion, and the Daubert claim is unexhausted.  As such, the claim is barred from this Court's review.

Petitioner has failed to establish cause and prejudice or satisfy the actual innocence gateway exception to excuse this defaulted claim.  Thus, ground one is due to be denied as barred.

## B.  Ground Two – the Nelson Claim

In the second ground of the Petition, Petitioner raises a Nelson claim, claiming the trial court abused its discretion by failing to conduct an adequate inquiry and appoint substitute counsel, depriving him of due process of law.  Petition at 14. Petitioner raised a comparable claim in his appeal brief upon the

trial court's finding there was no probable cause to believe Petitioner's condition had so changed that it was safe for him to be at large. Ex. B at 25-40.  The 5th DCA affirmed.  Ex. E.

This Court is bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate, which in this instance, it did not.  McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).  Whether the trial court performed a proper and adequate Nelson inquiry is certainly a matter of state law.  Thus, even if the Nelson inquiry was inadequate, "it is not the province of a federal habeas court to reexamine state-court determination on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).

In the alternative, to the extent Fifth and Fourteenth Amendment claims were raised and addressed, the adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petition is not entitled to relief on this ground because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of

the facts based on the evidence presented in the state court proceedings.  Therefore, ground two is due to be denied.

### C.  Ground Three – Probable Cause for Release

In his third ground for relief, Petitioner claims the trial court abused its discretion by finding no probable cause for release although Petitioner is over sixty years of age, he submitted statistical support showing significant reduction in reoffending based on age, and the Static-99R now accounts for age.[8] Petition at 20.  Petitioner raised a comparable claim in his appeal brief upon the trial court's finding there was no probable cause to believe Petitioner's condition had so changed that it was safe for him to be at large.  Ex. B at 40-48.  The 5th DCA affirmed the trial court's decision.  Ex. E.

On appeal, the state responded through its Answer Brief:

> In this case, the trial court determined that probable cause had not been shown that Appellant's condition had so changed that it was safe for him to be at large and that he would not engage in any acts of sexual violence if discharged.  The trial court's factual findings are supported by competent substantial evidence.  The Treatment Progress Report and recommendation by Dr. Depass determined that Appellant, who has yet to participate in the Comprehensive Treatment Program, had yet to fully address relevant

---

[8] Petitioner also claims he has been deprived of sexual offender treatment for over sixteen years, depriving him of due process of law.  Petition at 20.

> treatment issues and that his condition has
> not so changed that he is safe to be at large.
> Therefore, the trial court did not err by
> finding that there was not probable cause to
> believe that Appellant's condition had so
> changed that it was safe for him to be at large
> and that he would not engage in any acts of
> sexual violence if discharged.   See §
> 394.918(3), Fla. Stat.

Ex. C at 8-9.

The 5th DCA affirmed the decision of the trial court.  Ex.
E.  By affirming, the appellate court apparently determined there
was sufficient evidence to sustain the trial court's finding there
was not probable cause to believe that Petitioner's condition had
so changed it was safe for him to be at large.  Indeed, the 5th
DCA's affirmance of the decision of the trial court is an
adjudication on the merits entitled to AEDPA deference.
Therefore, the Court employs the "look through" presumption.  The
Court looks through the unexplained 5th DCA's decision to the last
related state court decision (the trial court's decision finding
lack of probable cause) and presumes the unexplained 5th DCA's
decision adopted the same reasoning as the trial court.  Wilson.

The Court is convinced that fair-minded jurists could agree
with the state court's decision.  The trial court found none of
the evidence presented was so convincing that it would "entertain
a reasonable belief that the committed person's mental abnormality

or personality disorder has so changed that the person is safe to be at large." Ex. A at 345 (citation omitted). The court found the Static 99R itself showed Petitioner still presents a risk of recidivism even though he is now reached sixty years of age. Importantly, the record also demonstrates Petitioner refused to participate in recommended therapy although his conviction is considered final and he has fully served his criminal sentence.[9] Id.

The record supports these conclusions. The Treatment Progress Report shows Petitioner has failed to fully address relevant treatment issues by refusing to participate in the CTP at the FCCC. Ex. A at 351-52. Petitioner has not been deprived of treatment, as he alleges; he has refused to participate in the CTP offered at FCCC. The Static-99R Coding Form completed by Dr. Waldman, Petitioner's own expert, shows Petitioner is still in the low-moderate risk category. Ex. A at 216. The record shows Petitioner has not entered the CPT program. There is not

---

9 Unlike the committed person in Chukes v. State, 90 So. 3d 950, 955-56 (Fla. 5th DCA 2012) (finding the defendant presented sufficient evidence at the limited probable cause hearing such that he was entitled to a full trial after the expert opined defendant had undergone serious changes as a result of participation in an intensive long term treatment program – Chukes was already in Level III of the program - and was presently determined to be safe to be at large), Petitioner has not progressed, or even started, the CTP treatment program.

sufficient evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that Petitioner's mental abnormality or personality disorder has so changed that Petitioner is safe to be at large.  See Holder v. State, 123 So. 3d 136, 140 (Fla. 5th DCA 2013) (the defendant relied on two psychologists' report recommending release).

In this regard, the 5th DCA did not act contrary to Jackson v. Virginia, 443 U.S. 307, 319 (1979), or other clearly established federal law, when it concluded that there was sufficient evidence to sustain the trial court's decision.  The decision of the 5th DCA is entitled to AEDPA deference.  The adjudication of the claim is not contrary to or an unreasonable application of federal law or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on ground three and ground three is due to be denied.

### D.  Ground Four – Sexually Violent Predators Act

In his fourth ground for habeas relief, Petitioner raises a claim of the unconstitutionality of the Involuntary Civil Commitment of Sexually Violent Predators Act (Act), Fla. Stat. § 394.910 ("Jimmy Ryce Act").  He contends the Act is overbroad, unconstitutionally vague, and is punitive because he will never accept treatment under the Act.  Petition at 26.

27

Petitioner raised a comparable claim in ground or issue three of his state petition for writ of habeas corpus before the circuit court of DeSoto County. Ex. G at 30-31. The circuit court denied the petition, id. at 663-74, finding the Act constitutional in reliance on Westerheide v. State, 767 So. 2d 637 (Fla. 5th DCA 2000), decision approved by 831 So. 2d 93 (Fla. 2002). Ex. G at 670 n.17.

Upon review, the Act is not unconstitutionally punitive as it is similar to the Kansas Sexually Violent Predator Act in many respects, Barker v. Sheldon, No. 2:09-cv-701-FtM-29SPC, 2010 WL 672767, at *3 n.3 (M.D. Fla. Feb. 23, 2010) (not reported in F.Supp.2d) ("Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects.") (citation omitted). In Kansas v. Hendricks, 521 U.S. 346 (1997), the United States Supreme Court found that involuntary confinement pursuant to the Kansas Act was not punitive because the Act did not establish criminal proceedings. The same can be said of Florida's Act. See Despart v. Kearney, No. 2:02-cv-4-FtM-29DNF, 2006 WL 2789007, at *6 (M.D. Fla. Sept. 26, 2006) (not reported in F.Supp.2d) (dismissing a claim of unconstitutionality as punishment). Indeed, the Florida Act "is a civil act-not criminal." Larimore v. Sec'y, Fla. Dep't of Children and Families, No. 3:14-cv-660-J-32JBT, 2017 WL

3268887, at *4 (M.D. Fla. Aug. 1, 2017) (not reported in F.Supp.)
(citation omitted).

Petitioner argues the Act is void for vagueness and overbroad.
Again, the Florida Act is similar to the Kansas Act in many
respects.  As the circuit court found, "[i]t is not only legal but
it is contemplated as part of the Act that the individual's past
criminal conduct is used as evidence of the individual's mental or
personality disorder to determine whether he or she is a sexually
violent predator subject to commitment."  Ex. G at 670 (footnote
omitted).   Although the Florida Act permits indefinite
commitments, "Petitioner has been continually detained because he
has not completed recommended treatment."  Id.

Addressing Petitioner's obstinacy in refusing to participate
in CTP, the circuit court said:

> Petitioner refuses to admit to the allegations
> against him in order to begin his treatment.
> He argues that admitting the allegations is a
> violation of his right against self-
> incrimination. However, admitting allegations
> for treatment purposes after commitment is not
> self-incrimination because he has already been
> found guilty of the underlying crime and found
> to be a predator.  At this point, he has been
> convicted of the sex offense, affirmed on
> appeal, served his sentence, and been civilly
> committed.  Therefore, **there is no "self-**
> **incrimination" possible** as to the 1993
> conviction because he cannot be re-tried for
> an offense he already served his sentence on
> [sic]."

Id. (footnote omitted) (emphasis added).

The circuit court of DeSoto County denied the petition. Id. at 674. On June 28, 2017, the Second District Court of Appeal affirmed per curiam. Ex. K. The mandate issued on July 25, 2017. Ex. L.

Here, like in Hendricks, Petitioner has been diagnosed as suffering from pedophilia, "a condition the psychiatric profession itself classifies as a serious mental disorder." Hendricks, 521 U.S. at 360. The purpose of a "Jimmy Ryce" Act is to hold the person until the "mental abnormality no longer causes him to be a threat to others." Id. at 363. As noted by the circuit court in denying the petition, Petitioner cannot challenge the fact-finding through a state petition for writ of habeas corpus because it is not a vehicle for raising issues which should have been raised on appeal or in postconviction proceedings. Ex. G at 671.

The 2nd DCA's decision affirming the trial court's decision denying Petitioner's claim of unconstitutionality of the Act is not contrary to, nor an unreasonable application of controlling Supreme Court precedent or based on an unreasonable determination of the facts. Ex. K. Therefore, Petitioner is not entitled to habeas relief on this ground and ground four is due to be denied.

### E.   Ground Five – Florida Civil Commitment Center's Reviews

In his fifth ground for relief, Petitioner challenges the way FCCC conducts its annual determinations and reviews.  Petition at 30.  He raised a similar claim in ground or issue four of his state petition for writ of habeas corpus.  Ex. G at 32.  In denying this ground, the circuit court of DeSoto County opined: "treatment and training decisions made by a professional are presumptively valid[.]" Id. at 672.  The court referenced Petitioner's inability to benefit from FCCC's treatment due to Petitioner's failure to admit he has a problem and seek therapy.  Id. at 673.  Significantly, the court found Petitioner's current complaints about the sufficiency of the evidence presented during his annual reviews is akin to Petitioner improperly attempting a collateral attack on a sister court's final order.  Id.  Finally, the court found any incident from 2002 too far removed to support a request for habeas relief "on the basis of improper conditions of confinement in 2016." Id. at 674.  As such, the circuit court denied the petition.  Id.  The 2nd DCA affirmed.  Ex. K.

Petitioner is not entitled to habeas relief on this ground.  The 2nd DCA's decision is entitled to deference.  The decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an

unreasonable application of Supreme Court law or based on an unreasonable determination of the facts.

As noted by Respondents, the FCCC staff exercised professional judgment, finding Petitioner has yet to fully address relevant treatment issues for his pedophilia (sexual interests, distorted attitudes and behaviors, socio-affective issues, and self-management). Morel v. Wilkins, 84 So. 3d 226, 237 (Fla. 2012) (per curiam) (treatment and training decisions made by a professional are presumptively valid). Notably, Petitioner has outright refused to participate in the CTP offered by the FCCC; therefore, the circuit court's reluctance to find probable cause to believe Petitioner's condition has so changed that it is safe for him to be at large and the person will not engage in acts of sexual violence if discharged is not an unreasonable determination under the circumstances, particularly when Petitioner still falls, according to his own expert, in the low-moderate risk category even though he has reached the age of sixty. Ex. A at 216.

The FCCC's annual examinations of Petitioner's mental condition are not so far outside the bounds of professional norms that they would be considered to be unexercised professional judgments. Indeed, there is not such a departure from professional standards in this record that Petitioner has been

deprived of due process of law.  Youngberg v. Romeo, 457 U.S. 307, 321 (1982) (the requirement is the courts make certain professional judgment was exercised, not to specify which choice should have been made).  Therefore, Petitioner is not entitled to habeas relief on ground five.

## VII.   OBJECTION

Petitioner filed an Objection (Doc. 13) to the Magistrate Judge's Order (Doc. 12) striking as untimely filed Petitioner's Notice of New Evidence – Grievance #18129 (Doc. 10) and Additional Notice of New Evidence – Substantive Due-Process Violations (Doc. 11).  The Court *construes* the objection as a request for a *de novo* review of the Magistrate Judge's Order.  Upon review, Petitioner has failed to show the Magistrate Judge's Order (Doc. 12) is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(a)(A). Therefore, Petitioner's Objection (Doc. 13) is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioner's Objection (Doc. 13) is **DENIED.**

2.   The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

3.   This action is **DISMISSED WITH PREJUDICE.**

4.   The **Clerk** shall enter judgment accordingly and close this case.

5.   If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**.[10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of April, 2020.

_____
BRIAN J. DAVIS
United States District Judge

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

```
sa 4/20
c:
Daryl L. Lavender
Counsel of Record
```